IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| IAN BROWN, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. GLR-16-3815 |
| DR. JASON CLEM, et al., | * | |
| Defendants | * | |

\*\*\*

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Jason Clem, M.D. ("Dr. Clem") and Angela Frey, R.N.'s ("Nurse Frey") (collectively, the "Medical Defendants") Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 17).[1] Also pending before the Court is Defendants Captain Shytina Drummond and CO II Daniel Price's (collectively, the "State Defendants") Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 31).[2] The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2016). For the reasons outlined below, the Court will grant both Motions.

### I.   BACKGROUND[3]

Plaintiff Ian Brown is a state inmate currently confined at the Eastern Correctional Institution ("ECI") in Westover, Maryland. (Compl. at 1, ECF No. 1). On March 28,

---

[1] Defendant "RN Vickie" has not been served with the Complaint. Accordingly, the Court will dismiss Brown's claims against RN Vickie without prejudice.

[2] The Clerk shall amend the docket to reflect the correct names of Defendants Shytina Drummond and Daniel Price.

[3] Unless otherwise noted, the facts outlined here are uncontroverted and the Court views them in the light most favorable to Brown.

2016, Brown reported to the medical department complaining he had been vomiting continuously for the previous two days. (Id. at 5; Defs.' Mot. Dismiss Ex. 4 at 2–3, ECF No. 17-4). The nurse instructed Brown to avoid eating until he had stopped vomiting for twenty-four hours, drink small sips of water, and remain on bed rest for three days. (Defs.' Mot. Dismiss Ex. 4 at 3). She advised Brown to return to the medical department if he did not improve after three days. (Id.).

Brown filed a "Sick Call Request/Encounter Form" on April 10, 2016, explaining he had recently recovered from a "virus" but was sick again. (Defs.' Reply Opp. Mot. Dismiss Ex. 1 at 30). On April 13, 2016, a nurse practitioner diagnosed Brown with "acute pancreatitis" and admitted him to the prison infirmary. (Compl. at 5; Defs.' Mot. Dismiss Ex. 4 at 5–7). While in the infirmary, Nurse Frey administered Brown an IV for dehydration and medicine to treat his nausea. (Defs.' Mot. Dismiss Ex. 4 at 8). Dr. Clem examined Brown in the infirmary on April 14, 2016. (Id. at 18–19). The following day, Dr. Clem re-examined Brown and scheduled him for a CT scan at Peninsula Regional Medical Center ("PRMC"). (Id. at 24–25). Brown was admitted to PRMC later that day. (Id. at 26–29).

While at PRMC, Brown was diagnosed with a large cystic lesion within the pancreatic head, chronic gastritis, and Hepatitis C. (Id.). Brown underwent a surgical procedure to treat his pancreatic condition. (Id. at 29). He was discharged from PRMC on April 27, 2016, at which time he was prescribed medicine for pain relief. (Id.). Upon his release from PRMC, Brown returned to the ECI infirmary. (Id. at 30–31). During his stay in the infirmary, Brown received instructions for his post-surgery recovery and was

prescribed medicine for pain relief as necessary. (Id. at 32, 38–51, 53–57). Dr. Clem evaluated Brown again on April 29, 2016, at which time he extended Brown's prescription for pain medicine to May 4, 2016, and prescribed Brown 600 mg of Ibuprofen. (Id. at 36–37). Brown returned to the medical department on May 2, 2016, in an attempt to obtain some type of pain medication for the "severe pain he was experiencing." (Compl. at 5). Dr. Clem evaluated brown in the infirmary at this time, and concluded that Brown "was in stable condition and ready to be returned to his housing without any conditions." (Clem Aff. ¶ 11, ECF No. 17-5). On May 25, 2016, after being seen at the Chronic Care Clinic at ECI, Brown's pancreatitis was deemed resolved. (Defs.' Mot. Dismiss Ex. 4 at 62–65).

Over the next several months, Brown complained at times of abdominal pain and vomiting. (Id. at 66–105). At other times, Brown described himself as having a good appetite, with no complaints of nausea or vomiting. (Id. at 71–74, 76). Brown's medical providers prescribed him various analgesic pain relievers and pancreatic enzymes to reduce stomach gasses. (Id. at 66–105). Brown was ultimately referred to a gastroenterologist for treatment. (Id. at 98–105).

Brown believes he was only prescribed "placebos" instead of pain medication. (Brown Aff. ¶ 9, ECF No. 24-1). As a result, Brown repeatedly requested to be prescribed Tramadol. (Defs.' Mot. Dismiss Ex. 1 at 71, 80–82). Brown's medical providers declined to prescribe him Tramadol, however, because of Brown's history of drug abuse, Tramadol's addictive nature, and the concern over the variety and unverified nature of Brown's symptoms. (Id. at 72; Clem Aff. ¶ 13, 18).

3

Plaintiff filed ARP ECI-2477-16 on November 16, 2016, alleging that Dr. Clem failed to refer him to a specialist for post-operative complications and asserting that Clem's conduct constituted deliberate indifference to his medical needs. (Shumaker Decl. at 21, ECF No. 31-5). Plaintiff withdrew the grievance on December 7, 2016. (Id. at 22).

Plaintiff filed ARP ECI-221-17 on January 25, 2017, alleging Nurse Practitioner Kerpelman saw him on December 21, 2016 and advised he needed a special diet that was not available to ECI; that Dr. Clem would not provide him pain medication; and voiced other complaints about the provision of health care. (Id. at 23–24). After investigation, the grievance was dismissed on February 22, 2107, as Plaintiff's medical records reflected he received appropriate medical care. (Id. at 29–37). On November 18, 2016, Brown filed the instant complaint under 42 U.S.C. § 1983 (2018), naming as defendants "Dr. Jason Clem, RN Angela Frey, Captain Drummond, RN Vickie, and C/O II Price." (ECF No. 1).[4]

---

[4] Brown raises for the first time in his Opposition claims that he has been denied treatment for the Hepatitis C virus (HCV). (Pl.'s Opp. Defs.' Mot. Dismiss at 1, 3, ECF No. 24). Brown may not amend his Complaint through his motion briefs. Zachair, Ltd. v. Driggs, 965 F.Supp. 741, 748 n.4 (D.Md. 1997) aff'd, 141 F.3d 1162 (4th Cir. 1998). If Plaintiff believes his rights have been violated relative to the treatment of HCV, he may file a separate civil rights Complaint naming the appropriate parties and setting forth those allegations.

## II. DISCUSSION

**A.** <u>**Standard of Review**</u>

    **1.** **Motion to Dismiss**

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." <u>King v. Rubenstein</u>, 825 F.3d 206, 214 (4th Cir. 2016) (quoting <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243–44 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. <u>Goss v. Bank of Am., N.A.</u>, 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting <u>Walters v. McMahen</u>, 684 F.3d 435, 439 (4th Cir. 2012)), <u>aff'd sub nom.</u>, <u>Goss v. Bank of Am., NA</u>, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual

allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

Brown filed his Amended Complaint pro se. Pro se pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); accord Brown v. N.C. Dep't of Corr., 612 F.3d 720, 722 (4th Cir. 2010). Pro se complaints are entitled to special care to determine whether any possible set of facts would entitle the plaintiff to relief. Hughes v. Rowe, 449 U.S. 5, 9–10 (1980). But even a pro se complaint must be dismissed if it does not allege "a plausible claim for relief." Forquer v. Schlee, No. RDB-12-969, 2012 WL 6087491, at *3 (D.Md. Dec. 4, 2012) (citation and internal quotation marks omitted).

### 2. Conversion to a Motion for Summary Judgment

In this case, Defendants filed a Motion to Dismiss, or in the Alternative, for Summary Judgment. (ECF No. 28). A motion styled as a motion to dismiss or, in the alternative, for summary judgment implicates the Court's discretion under Rule 12(d). See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd sub nom. Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the

pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d).

The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)). The Court's complete discretion is guided by the United States Court of Appeals for the Fourth Circuit's two-part test for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion. Under this test, the "parties [must] be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment" and "the parties [must] first 'be afforded a reasonable opportunity for discovery.'" Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013) (quoting Gay v. Wall, 761 F.2d 175, 177 (4th Cir. 1985)).

When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005).

Here, Defendants caption their Motions in the alternative for summary judgment and attach matters beyond Brown's Complaint for the Court's consideration. (ECF No. 28). In response, Brown offers his own matters beyond his Complaint, including two

affidavits. (See Pl.'s Opp. Defs.' Mot. Dismiss Ex. A–E, ECF No. 24-1 through 24-5). Thus, the Court will construe Defendants' Motions as motions for summary judgment.

### 2. Motion for Summary Judgment

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526

F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

**B. Analysis**

**1. Exhaustion of Administrative Remedies**

State Defendants raise the affirmative defense that Brown has failed to exhaust his administrative remedies. If Brown's claims have not been properly presented through the administrative remedy procedure they must be dismissed pursuant to the Prisoner

Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e (2018). The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

§ 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002); see Chase v. Peay, 286 F.Supp.2d 523, 528 (D. Md. 2003), aff'd, 98 Fed. Appx. 253 (4th Cir. 2004).

A claim that has not been exhausted may not be considered by this court. See Jones v. Bock, 549 U.S. 199, 220 (2007). In other words, exhaustion is mandatory. Ross v. Blake, ___ U.S. ___, 136 S.Ct. 1850, 1857 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. Ross, 136 S.Ct. at 1856 (citing Miller v. French, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008); see

Langford v. Couch, 50 F.Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." Woodford v. Ngo, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" Woodford 548 U.S. at 93 (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). But, the court is "obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007); see Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006).

The Maryland Department of Public Safety and Correctional Services ("DPSCS") has an established "administrative remedy procedure" ("ARP") for use by Maryland State prisoners for "inmate complaint resolution." See generally Md. Code Ann. (2008 Repl. Vol.), Corr. Servs. ("C.S."), §§ 10-201 et seq.; Md. Code Regs. ("COMAR") 12.07.01.01B(1) (defining ARP). The grievance procedure applies to the submission of "grievance[s] against . . . official[s] or employee[s] of the Division of Correction." C.S. § 10-206(a).

Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance' to include a "complaint of any individual in the custody of the [DOC] . . . against any officials or employees of the [DOC] . . . arising from the circumstances of custody or confinement." COMAR 12.07.01.01B(8). An inmate "must

11

exhaust" the ARP process as a condition precedent to further review of the inmate's grievance. See C.S. § 10-206(b); see also COMAR 12.07.01.02.D; OPS.185.0002.02.

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the Inmate Grievance Office ("IGO") against any DOC official or employee. C.S. § 10-206(b). However, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process, before filing a grievance with the IGO. See C.S. § 10-206(b); see also OPS.185.0002.02. There is an established administrative remedy procedure process that applies to all Maryland prisons. OPS.185.0002.02. Thus, when the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO.

The ARP process consists of multiple steps. For the first step, a prisoner is required to file his initial ARP with his facility's "managing official" OPS.185.0002.05C(1), which is defined by C.S. § 1-101(k) "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." In the DOC, each facility's warden is responsible for the ARP at the institutional level. OPS.185.0002.05E. Moreover, the ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. OPS.185.0002.05J.

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP. The prisoner has 30 days to file an appeal with the DPSCS's Deputy Secretary for Operations or that official's designee. OPS.185.0002.05L. For

prisoners in DOC facilities, the Commissioner of Correction is the official to whom this appeal is sent. Id.

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO. OPS.185.0002.05D; C.S. § 10-206(a); C.S. § 10-210; COMAR 12.07.01.05B. When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a). If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. C.S. § 10-207(b)(1); see COMAR 12.07.01.07B. An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. See C.S. § 10-208(2)(c); COMAR 12.07.01.07-.08. The conduct of such hearings is governed by statute. See C.S. § 10-208; COMAR 12.07.01.07D; see also Md. Code Ann., State Gov't §§ 10-101 et seq.

Here it is undisputed that Brown failed to begin his administrative remedies as to his claims against the State Defendants. Accordingly, his Complaint against Drummond and Price will be dismissed.

   2.   **Denial of Medical Care Claim**

The Medical Defendants assert there are no facts to indicate a claim for violation of Brown's civil rights under §1983, and they are entitled to summary judgment as a

13

matter of law. The Court agrees.

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. Gregg v. Georgia, 428 U.S. 153, 173 (1976); see also Estelle v. Gamble, 429 U.S. 97, 102, (1976). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. See Estelle v. Gamble, 429 U.S. at 106; see also Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. See Hudson v. McMillian, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). A "'serious . . . medical need'" is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)).

Proof of an objectively serious medical condition, however, does not end the inquiry. The subjective component requires a determination as to whether the defendant acted with "a sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298

(1991); see Farmer, 511 U.S. at 839-40. As the King court reiterated, "[t]he requisite state of mind is thus 'one of deliberate indifference to inmate health or safety.'" 825 F. 3d at 219 (citation omitted). Although this "'entails more than mere negligence . . . it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" Id. (quoting Farmer, 511 U.S. at 835).

In order "[t]o show an Eighth Amendment violation, it is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." Lightsey, 775 F.3d at 178. In other words, deliberate indifference requires a showing that the defendant disregarded a substantial risk of harm to the prisoner. Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001).

A plaintiff can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015) (quoting Farmer, 511 U.S. at 842).

For medical care providers, "any negligence or malpractice on the part of the doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." Johnson v. Quinones, 145 F.3d 164, 166 (4th Cir. 1998). Without evidence that a doctor linked presence of symptoms with a diagnosis of a serious medical condition, the subjective knowledge required for Eighth Amendment liability is not

present.  Id. at 169 (actions inconsistent with an effort to hide a serious medical condition, refutes presence of doctor's subjective knowledge).

In essence, the treatment rendered must be so grossly incompetent or inadequate as to shock the conscience or to be intolerable to fundamental fairness.  Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted) (overruled in part on other grounds by Farmer, 511 U.S. at 837; aff'd in pertinent part by Sharpe v. S.C. Dep't of Corr., 621 Fed. Appx. 732 (Mem) (4th Cir. 2015)).  A prisoner's disagreement with a prescribed course of treatment is not enough to establish deliberate indifference.  See Peterson v. Davis, 551 F.Supp. 137, 146 (D.Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984).  And, the right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable."  Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977) (emphasis added).

Medical Defendants admit Brown suffers from pancreatic disease, but assert his condition has been carefully monitored and treated.  Although pancreatic disease constitutes a serious medical need sufficient to satisfy the objective component of an Eighth Amendment analysis, Brown failed to offer sufficient evidence that the Medical Defendants' conduct rose to the level of deliberate indifference.

The right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable."  Bowring, 551 F.2d at 47–48.  The undisputed evidence in this case demonstrates that Brown was provided treatment for his

acute pancreatitis and thereafter was provided with the appropriate conservative follow-up care to treat his condition. While Brown experienced pain and frustration with the delay in his recovery, the parties do not dispute that his complaints were considered, he was provided additional medication, counselling, blood work, and diagnostic testing in an effort to treat his condition. And though Brown disputes how quickly he was given treatment or the severity of his post-operation symptoms, Brown's deliberate indifference claim amounts to little more than a disagreement with the course of treatment prescribed, which is insufficient to establish deliberate indifference. See Peterson, 551 F.Supp. at 146.

The Court, therefore, concludes that Brown fails to offer sufficient evidence to withstand summary judgment that the Medical Defendants' conduct rose to the level of deliberate indifference. Accordingly, the Court will grant the Medical Defendants' Motion.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Defendants Dr. Clem and Nurse Frey's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 17). The Court will also grant Defendants Captain Shytina Drummond and CO II Daniel Price's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 31). A separate Order follows.

Entered this 30th day of March, 2018.                   /s/
                                                               George L. Russell, III
                                                               United States District Judge